NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 24 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RILEY'S AMERICAN HERITAGE
FARMS, a California corporation; JAMES
PATRICK RILEY, an individual,

        Plaintiffs-Appellants,

 v.

JAMES ELSASSER; et al.,

        Defendants-Appellees,

 and

CLAREMONT UNIFIED SCHOOL
DISTRICT,

        Defendant.

No.   23-55516

D.C. No.
5:18-cv-02185-JGB-SHK

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Submitted April 3, 2024[*]
Pasadena, California

Before:  R. NELSON, VANDYKE, and SANCHEZ, Circuit Judges.
Dissent by Judge SANCHEZ.

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

This case asks whether the Claremont Unified School District (CUSD) violated the First Amendment rights of Riley's American Heritage Farms and its owner, James Riley (collectively the Riley's Plaintiffs). Following parental complaints about the farm owner's Twitter posts—CUSD told its schools to cancel previously booked field trips to the farm. This appeal presents a narrower question. In a prior appeal, we reversed the district court's granting of summary judgment to Appellees—CUSD board members and three school administrators. We remanded for a trial to resolve a factual dispute over whether Appellees "maintain an ongoing policy in violation of the Riley plaintiffs' First Amendment rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 n.14 (9th Cir. 2022).

After losing the appeal, "the Board unanimously approved a list of field trip vendors, including Riley's Farm," adopted a resolution which "affirms . . . that the District has no policy barring or discouraging District personnel from organizing field trips to Riley's Farm," and "instructed CUSD principals" to "treat Riley's Farm the same as they would any other field trip vendor." *Riley's Am. Heritage Farms v. Claremont Unified Sch. Dist.*, No. 5:18-cv-02185-JGB-SHK, 2023 WL 3963900, at *5 (C.D. Cal. May 18, 2023). It also clarified that "the District does not permit [its employees] to consider the political beliefs or speech of persons affiliated with a proposed field trip vendor in determining whether to approve a field trip." *Id.* The district court granted summary judgment to Appellees again on the theory that these

2

changes made it clear there was no longer a dispute about the presence of an ongoing policy, so there was "nothing more for the Court to do." *Id.* at *7. We have jurisdiction, *see* 28 U.S.C. § 1291, and again reverse.

1. Appellees argue that, because of their post-appeal activities, there is no longer a dispute about whether they maintain an ongoing policy violating the rights of the Riley's Plaintiffs. If they are correct, they assert, then they have sovereign immunity as agents of the school district. The Riley's Plaintiffs respond that the post-litigation changes did not fully resolve the harms that they suffered. Further, they argue that, even if they did, the voluntary-cessation exception to mootness means that, for our purposes, the dispute about whether there is an ongoing policy remains.

We must resolve the interplay between the voluntary-cessation exception to mootness and Eleventh Amendment immunity. We have held that the Eleventh Amendment protects California school districts as arms of the state. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992); *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 934 (9th Cir. 2017).[1] Those protections yield only if there is an ongoing unconstitutional policy whose future applications can be

---

[1] It is not clear that *Belanger*'s and *Sato*'s conclusions about California school boards being arms of the state remain good law after *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc). We need not resolve that question. Even if CUSD is an arm of the state, we resolve the case on narrower grounds because there remains a dispute of fact about the existence of an ongoing policy.

enjoined in suits against state officers. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016).

As to mootness, the "voluntary cessation of a challenged practice does not moot a case unless subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017) (cleaned up). We can resolve these issues "in any order." *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023).

2. We decide the mootness point first because—at least here—its resolution bears on Appellees' sovereign immunity. Here, we have already held that there is a dispute of fact about the existence of a policy harming the Riley's Plaintiffs. *Riley's*, 32 F.4th at 731 n.14. Following that conclusion, the Board adopted a resolution adding Riley's Farm back to the list of approved vendors. Since that change was not statutory or regulatory, the factors set out in *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014), govern whether Appellees' challenged conduct may reasonably be expected to recur such that the case is not moot. The *Rosebrock* factors point toward a live controversy. Given the policy's lack of formality and relative novelty, how easily it can be reversed, and the lack of procedural safeguards to protect from arbitrary action, Appellees have not carried their heavy burden to show that the

4

conduct cannot reasonably be expected to recur. Thus, for our purposes, the dispute about the existence of an ongoing policy is live.

3. Our holding is narrow and follows directly from our prior holding that there was a dispute of fact about the existence of an ongoing unconstitutional policy. Because the later changes did not moot the policy, at summary judgment, the evidence creates an issue of material fact about whether there is such a policy and whether it is ongoing. A party cannot circumvent a court's holding about a disputed fact by changing course in the midst of litigation—even if the party is a state actor.

4. In so holding, we tread no new ground. Even in cases involving defendants with Eleventh Amendment immunity, we have recognized harms as "ongoing" even after a defendant's voluntary cessation of the unlawful conduct or policy. In *R.W. v. Columbia Basin College*, for example, we held that the *Ex parte Young* exception to sovereign immunity applied despite the expiration of a challenged policy because, among other things, the effects of the new policy were "uncertain" and the initial harm was "indefinite[]." 77 F.4th 1214, 1225–27 (9th Cir. 2023).

The Riley's Plaintiffs raise those same concerns here—from the start of the case until the first appeal, there was no foreseeable end to the policy. And even now, the Riley's Plaintiffs claim they are still feeling the effects of the policy. Trips to Riley's Farm from CUSD schools, a long-standing tradition for schools around CUSD for 17 years, *Riley's*, 32 F.4th at 716, have not happened since the policy was

enacted. Further, no procedural protections would prevent CUSD from blacklisting Riley's Farms again in the future in the face of parental complaints. The Eleventh Amendment does not preclude us from acting in such circumstances. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 20–21 (2020) (enjoining New York's governor even after the challenged policy changed while the case was pending); *Trinity Lutheran Church*, 582 U.S. at 457 n.1 (resolving merits of dispute against Missouri's governor even after he "directed the Department"—as CUSD did here—to cease the challenged conduct). Other courts follow the Supreme Court and do similarly.[2] We follow their lead and decline to let state actors end-run live disputes by voluntarily stopping conduct in the face of litigation and then claiming immunity.

In short, there was a dispute of fact during the first appeal about whether there was an unconstitutional policy. That dispute remains—despite CUSD's attempts to moot it out and thereby claim immunity. The Riley's Plaintiffs have a right to proceed to trial to determine whether there was an ongoing policy of CUSD

---

[2] *See, e.g.*, *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (observing that allowing a state actor to moot to a live constitutional controversy—and thereby claim sovereign immunity—by rescinding or altering a policy in the face of litigation "would work an end-run around the voluntary-cessation exception to mootness where a state actor is involved"); *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1308 (11th Cir. 2011) (reversing dismissal on grounds of sovereign immunity after concluding that "the actual basis of the court's ruling was that the claim for injunctive relief had become moot").

preventing field trips to Riley's Farm. And the district court is entitled, if there was such a policy, to enjoin its reinstatement after this case ends.

**REVERSED AND REMANDED.**

*Riley's Am. Heritage Farms v. Elsasser*, No. 23-55516

SANCHEZ, Circuit Judge, dissenting:

The Eleventh Amendment embodies "the postulate that States of the Union, still possessing attributes of sovereignty, shall be immune from suits, without their consent, save where there has been 'a surrender of this immunity in the plan of the convention.'" *Principality of Monaco v. State of Mississippi*, 292 U.S. 313, 322–23 (1934) (quoting THE FEDERALIST, No. 81 (Alexander Hamilton)). For over a century, the Supreme Court has held under *Ex parte Young*, 209 U.S. 123 (1908), that a narrow exception to state sovereign immunity exists where "a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective." *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (citation omitted).

Today the majority disregards the constitutional principles that empower an Article III court to hear cases against state officials, bypassing the requirements for obtaining injunctive relief under *Ex parte Young*. Because the district court correctly determined that Plaintiffs have failed to identify any material fact evincing an ongoing constitutional violation, I would affirm the district court's order granting summary judgment for Defendants. I respectfully dissent.

1. Defendant school officials are named only in their official capacities, and Claremont Unified School District ("CUSD") is a California public school

1

district, which is an arm of the State of California, *see Belanger v. Madera Unified School District*, 963 F.2d 248, 254 (9th Cir. 1992); *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 934 (9th Cir. 2017).[1]  The Eleventh Amendment bars suits against school district officials sued in their official capacities.  *See Eaglesmith v. Ward*, 73 F.3d 857, 860 (9th Cir. 1995).  Defendants are therefore not suable "persons" for purposes of 42 U.S.C. § 1983.  *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

Plaintiffs can maintain their § 1983 claims against Defendants in their official capacities only to the extent that the claims fall within the sovereign immunity exception under *Ex parte Young*.  "Although sovereign immunity bars money damages and other retrospective relief against a state or instrumentality of a state, it does not bar claims seeking prospective injunctive relief against state officials to remedy a state's *ongoing* violation of federal law."  *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (emphasis

---

[1] The majority's suggestion that *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc), may call into question our precedents finding California school boards an arm of the state is misplaced.  In updating the legal framework for review of Eleventh Amendment immunity claims, *Kohn* emphasized that "this new framework is unlikely to lead to different results" in our "past decisions granting sovereign immunity to state entities within the Ninth Circuit."  *Id.* at 1031–32.  We do not reach that question here because it was never briefed by the parties nor addressed by the district court.

added) (citing *Ex parte Young*, 209 U.S. at 149–56). "To bring a claim for prospective injunctive relief, a plaintiff '*must identify a practice, policy, or procedure* that animates the constitutional violation at issue." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 730 (9th Cir. 2022) (emphasis added) (quoting *Arizona Students' Ass'n*, 824 F.3d at 865).

Plaintiffs present no evidence of an ongoing unconstitutional practice, policy, or procedure. In our previous appeal of this case, we determined that CUSD Superintendent James Elsasser's 2020 testimony that the 2018 "guidance [requesting that no CUSD school attend Riley's Farm field trips] is still in place, [was] sufficient to create a genuine issue of material fact as to whether the Riley plaintiffs continue to suffer from an ongoing constitutional violation." *Id.* at 731. Since 2022, Defendants have presented uncontroverted evidence that no CUSD policy or practice exists barring schools from attending a Riley's Farm field trip.

First, the CUSD school board unanimously adopted Resolution No. 06-2023, stating that "the Board hereby reaffirms its prior assertions that the District has no policy barring or discouraging District personnel from organizing field trips to Riley's Farm." Second, the CUSD board unanimously voted in favor of a list of approved field-trip vendors, which includes Riley's Farm. Third, Superintendent Elsasser has instructed CUSD principals that the District "does not permit them to consider the political beliefs or speech of persons affiliated with a proposed field

3

trip vendor in determining whether to approve a field trip" and that all CUSD personnel are "to treat Riley's Farm the same as they would any other field trip vendor."

To the extent a retaliatory CUSD policy ever existed, Defendants' policy changes conclusively resolve whether Plaintiffs suffer from an ongoing constitutional violation. They do not. Resolution No. 06-2023 is a formal legislative enactment of CUSD policy that permits schools to organize field trips to Riley's Farm. Plaintiffs have not identified a more "formal" step the Board could have taken to enact this policy. Nor have Plaintiffs presented any evidence that despite CUSD's express policy actions and direction from the superintendent, there exists a hidden policy or practice that subjects them to the risk of constitutional injury. In other words, Plaintiffs have failed to present "a scintilla of evidence" as to the existence of an ongoing violation of federal law that would allow them to litigate against California State officials under the *Ex parte Young* exception to sovereign immunity and save them from summary judgment. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

2. Plaintiffs also lack standing to seek injunctive relief against state officials because they assert only speculative future harm. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive

4

relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the plaintiff sought damages and declaratory and injunctive relief after being subjected to a police chokehold, *id.* at 97–98. The Court held that the City's moratorium on chokeholds did not render the case moot because "the moratorium by its terms is not permanent," *id.* at 101, but nevertheless held that the district court lacked jurisdiction over the plaintiff's claim for injunctive relief because the risk he would be subjected to another police chokehold was speculative, *id.* at 108. The Court explained: "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Id.* at 111 (quoting *O'Shea*, 414 U.S. at 502).

Here, even if Plaintiffs' claim is not moot because CUSD's policy changes are "not permanent," Plaintiffs present only a hypothetical risk of future harm. To suffer such harm, CUSD would have to reverse Resolution No. 06-2023, remove Riley's Farm from the list of approved vendors, countermand Superintendent Elsasser's directive to school principals, *and* dissuade school officials who wish to organize a field trip to Riley's Farm from doing so based on Plaintiffs' political views. "The equitable doctrine that cessation of the challenged conduct does not

5

bar an injunction is of little help in this respect, for [Plaintiffs'] lack of standing does not rest on the termination of the [CUSD] practice but on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued." *Id.* at 109.

3. Finally, Plaintiffs do not present a redressable injury for this Court to address. Plaintiffs seek "to proceed to trial on the issue of prospective injunctive relief." But Defendants have already provided all the relief Plaintiffs could possibly obtain through court order. CUSD has reaffirmed in a unanimous resolution that it has no policy barring or discouraging District personnel from organizing field trips to Riley's Farm, has approved Riley's Farm on its list of approved vendors, and has forbidden District staff from considering the political beliefs or viewpoints of a proposed field-trip vendor in determining whether to approve a field trip. Plaintiffs fail to meet Article III's requirement of redressability—"a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

For the foregoing reasons, I would affirm the grant of summary judgment by the district court.